IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MADELEINE ENTINE, | : |
| | : Case No. 2:17-cv-946 |
| Plaintiff, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Jolson |
| SCOTT LISSNER, | : |
| | : |
| Defendant. | : |

## ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Currently before the Court is Plaintiff Madeleine Entine's Motion for Temporary Restraining Order (ECF No. 2) against Defendant Scott Lissner, ADA coordinator at the Ohio State University. Entine seeks an order enjoining Lissner and all those acting in concert with him, including the University, from removing her from the Chi Omega sorority house or taking any adverse action against her if she remains in the house. Having considered the Motion, and all papers in support of and in opposition to the Motion, as well as the arguments of counsel at the S.D. Ohio Civ. R. 65.1 conference, the Court hereby **GRANTS** the Motion.

Entine has shown the immediacy and irreparability of harm necessary to warrant the extraordinary relief of a TRO. *See Women's Med. Prof'l Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1–2 (S.D. Ohio Feb. 27, 2008) (Marbley, J.) (noting that, when deciding whether to grant a motion for TRO, focusing on the "irreparability and immediacy of harm" remains consistent with the commands of Rule 65(b)). The immediacy factor is easily satisfied here. Without the Court's intervention, Entine would be required to make the following choice by **Monday, October 30, 2017**: move out of the Chi Omega sorority house, or continue living in the house without her service animal, Cory. With regard to irreparability, where, as here, a

1

plaintiff seeks injunctive relief to prevent the violation of a federal statute that specifically provides for injunctive relief, she need not even show irreparable harm. *Jordan v. Greater Dayton Premier Mgmt.*, 9 F. Supp. 3d 847, 862 (S.D. Ohio 2014) (citation omitted). But even so, Entine has shown that she will suffer irreparable harm if the TRO is not granted. In the absence of a TRO, Entine will either be forced to move out of the Chi Omega house or live in the house without Cory. And if she does choose to move out of the house and her room is re-rented to another sorority member, she will not be able to return to the house if the Court ultimately rules in her favor. *See Chapp v. Bowman*, 750 F. Supp. 274, 277 (W.D. Mich. 1990) (finding that plaintiffs demonstrated they would suffer irreparable injury if they sold property to an innocent purchaser in the absence of a preliminary injunction, because they could not undo the sale). Moreover, as Vice President of the Chi Omega sorority, Entine is required to live in the sorority house. Thus, if Entine moves out of the house, she could lose her position as an officer in the Chi Omega sorority.

In addition, the Court notes that Lissner apparently considered Cory to be an "emotional support animal" rather than a service animal as defined by the ADA regulations. *See* 28 C.F.R. § 35.104. Under these regulations, the University must generally permit the use of a service animal, *id.* § 35.136(a), subject to several narrow exceptions: (1) if Cory's presence would fundamentally alter the nature of the University's services, programs, or activities; (2) if Cory would pose a direct threat to the health or safety of others; or (3) if Cory was out of control or not housebroken. *See id.* §§ 35.130(b)(7)(i); 35.139; 35.136(b). Further, the Department of Justice's guidance interpreting the ADA regulations clearly states that allergies and fear of dogs are not valid reasons for denying access to people using service animals. (*See* ECF No. 2 at 9.) Because Lissner did not consider Cory a service animal, his inquiry was not rigorous enough to

2

determine whether one of the exceptions to the ADA's requirement that public entities allow the use of service animals applied to Cory.

As for the University's position that Lissner had to make a "disability-neutral" determination as to which Chi Omega member should be accommodated—which resulted in Lissner accommodating the member that signed her lease first—nowhere in the University's written policies or procedures is there legal authority supporting this position. Nor is this "policy" recorded anywhere. It appears to be a completely arbitrary practice of Lissner's that may not even be consistent with the University's policies, practices, and procedures.

Finally, questions remain about Ms. Goldman's health condition. It is unclear from the record before the Court whether Ms. Goldman has requested an accommodation from the University for the allergies which purportedly exacerbate her Crohn's disease. Also troubling to the Court is the uncontroverted evidence that members of the Chi Omega sorority informed Lissner that Ms. Goldman "disclosed that her father suggested she enter [Entine's] room when [Entine] was away and rub her face in [Entine's] things to worsen her allergic reaction." (Verified Compl., Doc. 1, Ex. 3, at 6.) This evidence calls into question both the severity of Ms. Goldman's condition, the veracity of Ms. Goldman's assertions, and the depth of Lissner's investigation.

Accordingly, Entine's Motion for Temporary Restraining Order is **GRANTED**. Pursuant to Fed. R. Civ. P. 65, Lissner and all others in active concert with him who receive actual notice of this Temporary Restraining Order by personal service or otherwise, are enjoined from removing Entine from the Chi Omega sorority house or taking any adverse action against her if she remains in the house.

Plaintiff must post a bond of **$1.00 by 12:00 p.m. on Tuesday, October 31, 2017**. This

Temporary Restraining Order will remain in effect until adjournment of the Preliminary Injunction hearing. The Preliminary Injunction hearing will be held on **Wednesday, November 8, 2017, at 9:30 a.m.**, before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Court Room 1, Room 331. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

Plaintiff must file her Motion for Preliminary Injunction by **Wednesday, November 1, 2017**. Defendant's response in opposition to the Motion for Preliminary Injunction must be filed on or before **Monday, November 6, 2017**. Plaintiff must file any reply in support of her Motion by **5:00 p.m.** on **Tuesday, November 7, 2017**. The focus of the parties' briefing should be the four factors the Court will consider in determining whether a Preliminary Injunction is warranted: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

An appendix outlining the briefing schedule and procedures to be followed at the Preliminary Injunction hearing follows this Order.

**IT IS SO ORDERED.**

                                                                           <u>s/Algenon L. Marbley</u>
                                                                           **ALGENON L. MARBLEY**
                                                                           **UNITED STATES DISTRICT JUDGE**

**DATED: October 30, 2017**